**EXHIBIT A**

# Case Information

## Monique Pena v. Board of County Commissioners of Cibola County, et. al.
D-1333-CV-2022-00103

🔄 Refresh    📁🔒    👁🔒    🖨    🔗    [File Into]

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| Cibola County ⇄ | Civil | Miscellaneous Civil | 6/8/2022 |

| Judge | Case Status | | |
|---|---|---|---|
| Villalobos, Amanda Sanchez ▾ | Open (Pending) | | |

## Related Cases [0]

No Related Cases found.

## Parties [4]

| Type | Name | Attorneys |
|---|---|---|
| Plaintiff | Monique Pena ▾ | Bridget J. Hazen ▾ |
| Defendant | Board Of County Commissioners Of Cibola County ▾ | |
| Defendant | CoreCivic ▾ | |
| Defendant | Brian Koehn ▾ | |

## Hearings [0]

No hearings found.

## Events [1]

[Oldest]   [Search events]   🔍  ❓

### OPN: COMPLAINT
File Date: 6/8/2022

For Negligence, Civil Rights Violations, Negligent Hiring, Training, Supervision and Retention, Loss of Consortium and Punitive Damages

| Name | Description | Security Description | Pages |
|---|---|---|---|
| Complaint.pdf.tiff | | E Filed Document | 15 |

© 2022 Tyler Technologies, Inc. | All Rights Reserved
Version: 2022.6.0.10101



|  |  |
|---|---|
| **SUMMONS** ||
| District Court: THIRTEENTH JUDICIAL<br>Cibola County, New Mexico<br>Court Address:<br>700 E Roosevelt Ave, Ste. 60<br>Grants, NM 87020 | Case Number:<br>D-1333-CV-2022-00103<br><br>Assigned Judge:<br>Amanda Sanchez Villalobos |
| MONIQUE PENA, Individually and as Personal Representative of the Wrongful Death Estate of Matthew Pena, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS OF CIBOLA COUNTY, CORECIVIC, BRIAN KOEHN in his individual capacity as the Chief Officer/Warden, JOHN/JANE DOE 1-18, individually and in his/her official capacity as employees of Cibola County Correctional Center and/or CoreCivic,<br><br>Defendants. | Defendant Name:<br><br>BOARD OF COUNTY COMMISSIONERS OF CIBOLA COUNTY<br>700 E Roosevelt, Ste. 50<br>Grants, NM 87020 |

**TO THE ABOVE NAMED DEFENDANT(S):** Take notice that

1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.
2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4. If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.
5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Grants, New Mexico, this 8th day of June, 2022.

TOINETTE GARCIA

CLERK OF DISTRICT COURT

By: /s/ Bernabe Jaramillo
_____
Deputy

*/s/ Bridget Hazen*
Signature of Attorney for Plaintiff
Name: Bridget Hazen
Address: 108 Wellesley Dr SE
Albuquerque, NM 87106
Telephone No.: (505) 247-4700
Fax No.: (866) 492-7692
Email Address: bridget@weemslaw.com

[SEAL: DISTRICT COURT CLERK, CIBOLA, NEW MEXICO]

T___ _____ __ __SUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

FILED
13th JUDICIAL DISTRICT COURT
Cibola County
6/8/2022 3:12 PM
Toinette Garcia
CLERK OF THE COURT
Bernabe Jaramillo

STATE OF NEW MEXICO
COUNTY OF CIBOLA
THIRTEENTH JUDICIAL DISTRICT COURT

MONIQUE PENA, Individually and
As Personal Representative of the Wrongful
Death Estate of Matthew Pena, Deceased,

        Plaintiff,

v.        No. D-1333-CV-2022-00103

BOARD OF COUNTY COMMISSIONERS OF CIBOLA
COUNTY, CORECIVIC, BRIAN KOEHN in his
individual capacity as the Chief Officer/Warden,
JOHN/JANE DOE 1-18, individually and in his/her official
capacity as employees of Cibola County Correctional
Center and/or CoreCivic,

        Defendants.

## COMPLAINT FOR NEGLIGENCE, CIVIL RIGHTS VIOLATIONS, NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION, LOSS OF CONSORTIUM AND PUNITIVE DAMAGES

COMES NOW, Plaintiff Monique Pena, individually and as Personal Representative of the Wrongful Death Estate of Matthew Pena, deceased, by and through her attorneys of record, Dathan Weems and Bridget Hazen (Dathan Weems Law Firm, LLC) and brings this Complaint for civil rights violations pursuant to the Fourteenth Amendment of the Constitution of the United States 42 U.S.C. § 1983, and the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 et seq. As grounds for this Complaint, Plaintiff states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a resident of Cibola County, New Mexico.

1

2. Plaintiff is court-appointed Personal Representative of the Wrongful Death Estate of Matthew Pena, deceased (herein "Decedent") and was the mother of Decedent during his lifetime.

3. At all times material hereto, Decedent was a resident of New Mexico, being held in Cibola County, New Mexico.

4. At all times pertinent to this Complaint, Decedent was in and under the direct and continuous custody, control, and supervision of Defendants.

5. Cibola County Correctional Center is a detention center located in Cibola County, New Mexico.

**Defendant Board of County Commissioners of Cibola County**

6. Defendant Board of County Commissioners for the County of Cibola (hereinafter, referred to interchangeably as Cibola County, Detention Center, or CCCC) is a local government entity organized and existing under the law of the State of New Mexico and is a "person" subject to suit herein. By state statute, the powers of Cibola County as a body politic and corporate are exercised by the Board. The Board is responsible for the policies, customs and practices of the agencies of the County including the Cibola County Correctional Center and its employees. The Board assumes the risks incidental to the maintenance of the law enforcement agency, and the employment of its law enforcement officers.

7. At all times pertinent hereto, Defendant CCCC acted through its owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, and other staff/personnel and are responsible for their acts or omissions pursuant to the doctrines of *Respondeat Superior*, agency or apparent agency.

8. Defendant CCCC operated and/or contracted with others, including Defendant CoreCivic, to operate the Cibola County Correctional Center in the State of New Mexico at all relevant times.

**Defendant CoreCivic**

9. Upon information and belief, Defendant CoreCivic operated the Cibola County Correctional Center at all relevant times.

10. By virtue of a contractual relationship with Cibola County to provide penological services, such as custody and supervision to detainees housed there, CoreCivic is a state actor and may be sued for constitutional violations pursuant to 42 U.S.C § 1983. *See Smith v. Cochran*, 339 F.3d 1205, 1215-16 (10th Cir. 2003) ("persons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment"); *see also Phillips v. Tiona*, 508 Fed. Appx. 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by detainees"); *Tavasci v. Cambron*, No. CIV 16-0461 JB/LF, 2017 U.S. Dist. LEXIS 82649, at *72 (D.N.M. May 31, 2017) (holding that private corporation managing a correctional facility under contract with the State of New Mexico are "persons" subject to suit under § 1983). The federal constitutional claims are brought against CoreCivic in its individual capacity.

11. Upon information and belief, Defendant CoreCivic is a publicly traded corporation incorporated in the State of Maryland and doing business in the state of New Mexico as more particularly described herein.

**Defendant Employees**

12. Defendant Brian Koehn is and was, at all relevant times, Warden of CCCC. Defendant Koehn is sued in his individual and official capacities.

13. Upon information and belief, Defendant Koehn was responsible for oversight of CCCC, including providing proper management and oversight and developing appropriate formal and informal policies, procedures, and detainee safety protections at the facility.

14. At all material times, Defendants John/Jane Does were residents of New Mexico.

15. At all material times, Defendants John/Jane Does were employees of CCCC and/or CoreCivic and were acting in the course and scope of their employment.

16. At all material times, Defendant CCCC was responsible for the policies, practices and customs of the Detention Center. Defendant CCCC was responsible for the safekeeping of detainees and ensuring that others did not violate the constitutionally protected rights of detainees while they were entrusted to CCCC or contractors, and agents, to include Defendant CoreCivic. Defendant CCCC was responsible for ensuring that CCCC and its contractors complied with federal and state laws. Defendant CCCC is also responsible for the hiring, screening, training, retention, supervision and discipline, counseling and control of the employees of the detention center, including employees John/Jane Doe named as defendants herein.

17. Upon information and belief, Defendants John/Jane Does I (law enforcement) were employees of CCCC. With regard to Plaintiff's 42 U.S.C § 1983 claims, Defendant John/Jane Does I are sued in their individual capacity and were acting under the color of state law in the course and scope of their employment and were residents of the State of New Mexico. Plaintiff will amend her complaint to add the true identities of these defendants once they are discovered.

4

18. Defendants John/Jane Doe were law enforcement officers within the meaning of NMSA § 41-1-12 (1978).

19. Immunity is waived for the actions described herein under NMSA § 41-4-1 (1978) *et seq.*, including sections § 41-4-6 (operation of a building) and § 41-4-12 (deprivation of rights under state and federal constitution).

20. A Notice of Claim was delivered pursuant to § 41-4-16 (1978).

21. This Court has jurisdiction over the parties and subject matter.

22. Venue is proper.

## PRELIMINARY ALLEGATIONS

23. Plaintiff's claims arise from the wrongful death of Decedent while under the care and custody of the defendants at Cibola County Correctional Facility in Milan, New Mexico on or about January 26, 2021.

24. At all times material hereto, Cibola County Correctional Center had a policy and practice of cutting costs by understaffing and providing inadequate training to its correctional officers.

25. At all material times hereto, the individually named defendants were employees and/or agents of Cibola County Correctional Center and/or CoreCivic and were acting within the course and scope of their employment and/or agency.

26. Defendant Koehn, as Chief Commanding Officer and/or Facility Leader of Cibola County Correctional Center, has control over the conduct of his staff and is responsible for ensuring that the facility he operates is safe.

27. Defendant Koehn, as Chief Commanding Officer and/or Facility Leader of Cibola County Correctional Center, has control over staffing and security and is responsible for ensuring appropriate staffing and security to meet the supervision requirements of the detainees.

28. Defendant Koehn, as Chief Commanding Officer and/or Facility Leader of Cibola County Correctional Center, is responsible for ensuring that personnel hired and retained are properly trained and supervised and can properly care for detainees houses under his care.

29. Defendant Koehn, as Chief Commanding Officer and/or Facility Leader of Cibola County Correctional Center, is responsible for ensuring that his facilities have, and enforce adequate policies and disciplinary measures to keep the facility running safely, including providing adequate staff-to-detainee ratios and proper emergency response.

30. All tortious conduct of individually named defendants hereinafter alleged is imputed to Cibola County Correctional Center as a matter of law.

## FACTUAL BACKGROUND

31. Upon information and belief, on or about January 14, 2021, Decedent was admitted to the Turquoise Lodge Hospital for drug rehabilitation, wherein he stated he had recently began engaging in self-harm.

32. Decedent was discharged from Turquoise Lodge Hospital on January 14, 2021 into the care and custody of his family.

33. On or about January 23, 2021, the Grants Police Department was contacted by members of Decedent's family due to concerns regarding Decedent's behavior. Decedent's family was concerned about Decedent's suspected use of narcotics and resulting behavior. Decedent was taken into protective custody by the responding police officers for his concerning conduct.

34. Upon information and belief, Decedent was booked in the Cibola County Correctional Center on or about January 24, 2021.

35. An initial screening was performed to determine Decedent's custody classification level and required degree of supervision and management.

36. At the time of his screening, Decedent stated that he was a daily fentanyl user and was going through withdrawals.

37. Given Decedent's drug withdrawals and suicidal ideation, Decedent should have been classified as high-risk and placed into restrictive housing.

38. Instead, despite his fentanyl withdrawal and suicidal ideation, Decedent was placed into the general population within the Center.

39. Decedent was housed in a single-occupancy cell.

40. Decedent did not receive the oversight, treatment, and attention from Center personnel that he required given his physical and mental state.

41. On or about January 26, 2021, Decedent committed suicide by hanging while isolated in his cell.

42. Defendants, individually and collectively, were responsible for accurately assessing Decedent's risk level during his initial screening and assigning his housing accordingly.

43. Defendants failed to accurately assess Decedent's risk level during the initial screening and by placing him into the general population instead of into restrictive housing.

44. By failing to accurately assess Decedent's risk level and subsequently placing him into the general population instead of into restrictive housing, Defendants created the opportunity for self-harm to occur.

45. Defendants, individually and collectively, were responsible for monitoring Decedent's cell to foresee and eliminate opportunities for self-harm, especially given his physical and mental state.

46. By failing to monitor Decedent's cell, Defendants created the opportunity for self-harm to occur.

47. Defendants, individually and collectively, showed a lack of care for the safety and welfare of Decedent, in derogation of duties owed to him.

48. Defendants showed a wanton disregard for the safety and security of detainees in their custody and care, including Decedent.

### COUNT I: §1983 FAILURE TO TRAIN AND SUPERVISE CAUSING VIOLATION OF CONSTITUTIONAL RIGHTS

49. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

50. Defendants are persons under 42 U.S.C. § 1983.

51. The acts and omissions of Defendants were conducted within the scope of their official duties and employment.

52. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law.

53. Defendants acted pursuant to policy and custom, with reckless disregard for Decedent's right not to be subjected to serious dangers created by and under the control of the Defendants.

54. Decedent was, at all material times, under the care, control and custody of Defendants and Defendants had a non-delegable duty to ensure the safety of all persons under their direct care, control and custody, including Decedent.

55. Implicit in Defendants' role to provide basic human needs is the foreseeability that failure to do so is likely to result in significant harm to a detainee, such as Decedent.

56. Defendant CCCC hired Defendants John/Jane Does knowing they lacked the requisite experience and training necessary to properly screen, classify, and monitor detainees based on their physical and mental health, thereby creating an unreasonable risk of harm to Cibola County Correctional Center detainees, such as Decedent.

57. It was foreseeable that Defendants' failure to adequately train and supervise Defendants John/Jane Does was likely to result in safety violations and the deprivation of a detainee's Fourteenth Amendment rights.

58. Defendants knew or should have known that failure to properly staff the facility, including proper hiring, training and supervision, would have life-threatening consequences to the detainees housed there, such as Decedent.

59. Defendants' acts and omissions were pursuant to policy and custom of providing inadequate training to screen, classify and monitor detainees that violated the Constitutional rights of Decedent.

60. Defendants' acts and omissions pursuant to policy and custom indicates Defendants' deliberate indifference to the health and safety of the detainees at Cibola County Correctional Center.

61. The actions and omissions of the Defendants as described herein intentionally deprived Decedent of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused him other damages as set forth with greater particularity herein.

62. Defendants promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused the complained of constitutional harm, and acted reckless disregard for the rights of Decedent as secured by the Constitution.

63. As a proximate result of the Defendants' acts and omissions as stated with greater specificity herein, Decedent was harmed.

64. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

## COUNT II: 1983 FOURTEENTH AMENDMENT
## VIOLATION OF DUE PROCESS

65. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

66. In the Tenth Circuit, a pretrial detainee's due process rights under the Fourteenth Amendment parallel that of an inmate's Eight Amendment rights: "Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment . . . In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).

67. Jail officials have a responsibility to take "reasonable measures to ensure the safety of inmates" and detainees. *LeMaster*, 172 F.3d 756, 763. "In fact, the due process rights of a person in [this] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. at 244, 103 S.Ct. 2979.

68. Detention facilities violate the Eight Amendment's prohibition against cruel and unusual punishment if they cause unquestioned and serious deprivations of basic human needs that deprive detainees of the minimal civilized measure of life's necessities. *See Rhodes v.*

*Chapman*, 452 U.S. 337, 347 (1981).

69. The government assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety when it takes a person into custody against his or her will.

70. By and through the actions described above, Defendants violated Decedent's due process rights by violating the Eighth Amendment right to be free from cruel or unusual punishment. In particular, Defendants violated Decedent's right to be afforded a reasonable degree of safety from serious bodily injury and death.

71. Defendant CoreCivic, both on its own and through its officers, administrators, agents and employees, had an official policy, custom, or practice that was deliberately indifferent to Decedent's Fourteenth Amendment rights.

72. The acts and omissions of Defendants were the legal and proximate cause of Decedent's wrongful death.

73. Defendant's unconstitutional policies, customs, or practices as described herein were the legal and proximate cause of Decedent's wrongful death.

74. The acts and omissions of Defendants as described herein intentionally deprived Decedent of the securities, rights, privileges, liberties and immunities secured by the Constitution of the United States of America and caused his wrongful death.

75. Defendants CCCC and CoreCivic are liable for the negligence of their employees, staff, contractors and other agents, including Defendants John/Jane Does.

76. Defendants had the duty to ensure the health and safety of Decedent and such duty is a nondelegable duty.

77. As a result of Defendants' acts and omissions, Plaintiff suffered damages as set forth with greater particularity herein.

78. Defendants had a custom, policy, or practice of knowingly and with deliberate indifference failing to properly screen, classify, and monitor detainees.

79. Defendants acted, pursuant to policy and custom, with reckless disregard for Plaintiff's right not to be subjected to serious dangers created by and under the control of the Defendants.

80. Defendants knew, or should have known, that by failing to properly screen, classify, and monitor detainees, they were placing detainees at a risk of harm, especially detainees with substance abuse or mental health disorders such as Decedent.

81. Nonetheless, with deliberate indifference to Plaintiff's Fourteenth Amendment due process right to be free from cruel and unusual punishment, Defendants allowed for the conditions left Plaintiff vulnerable to harm.

## COUNT III: NEGLIGENCE

82. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

83. All Defendants herein had a duty of ordinary care to maintain a reasonably safe environment for detainees, complete with adequate security and supervision necessary to prevent foreseeable attempts of self-harm.

84. Defendants breached that duty by failing to properly screen, classify, and monitor detainees.

85. As a direct and proximate result of their breach, Decedent, who was a harm to himself, was placed in a harmful situation.

12

86. As a direct and proximate result for Defendants' negligence, Plaintiff suffered damages.

## COUNT IV: NEGLIGENT HIRING, TRAINING AND SUPERVISION

87. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

88. Defendants were negligent in the hiring, training and supervision of Cibola County Correctional Center employees who failed to adequately screen, classify, and monitor detainees.

89. Defendants' negligence includes all things stated herein but is not limited to:
    a. Inadequate mental health screenings of detainees upon intake;
    b. Inadequate drug screenings of detainees upon intake;
    c. Inadequate classification of detainees based on risk factor(s); and
    d. Inadequate monitoring of detainees.

90. Defendants knew or should have known that the lack of supervision, experience and training among their employees was likely to harm Cibola County Correctional Center detainees.

91. The negligence of Defendants directly and proximately caused Decedent's wrongful death.

92. As a direct and proximate result of the intentional, willful, reckless or negligent acts and omissions of Defendants and their employees and agents, Plaintiff suffered damages.

## COUNT V: NEGLIGENT OPERATION OF A BUILDING

93. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

94. Defendants negligently failed to provide reasonably adequate security to detainees at Cibola County Correctional Center. That failure resulted in a danger to detainees beyond the reasonable and expected risks of prison life.

95. By committing the acts and omissions described above, Defendants breached their duty to operate and maintain the Cibola County Correctional Center in a manner that prohibits unreasonable or unexpected dangers to detainees.

96. Defendants' breach of duty was a cause-in-fact and proximate cause of harm to Plaintiff.

97. Immunity is waived for Defendant CCCC's negligence under NMSA § 41-4-6.

## DAMAGES

98. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

99. As the direct and proximate result of the breaches and violations by Defendants, Plaintiff suffered damages.

100. The conduct of Defendants CCCC and CoreCivic, as well as their employees, were willful, wanton, and in reckless disregard to the rights of the Plaintiff and punitive damages should be awarded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment jointly and severally against all Defendants on all claims;
2. Monetary damages, including punitive damages, in an amount to be determined at trial;
3. An award of attorney's fees, costs and expenses in bringing this lawsuit; and
4. All other relief that law and justice require.

Respectfully Submitted,

**DATHAN WEEMS LAW FIRM, LLC**

By: */s/ Bridget Hazen*
Bridget Hazen
Dathan Weems
*Attorneys for Plaintiff*
108 Wellesley Drive SE
Albuquerque, New Mexico 87106
Phone: (505) 247-4700
bridget@weemslaw.com
dathan@weemslaw.com