## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MONIQUE PENA, Individually and**
**As Personal Representative of the Wrongful**
**Death Estate of Matthew Pena, Deceased,**

**Plaintiff,**

**v.**                                                    **CIV. No. 22-516 MIS-KK**

**BOARD OF COUNTY COMMISSIONERS FOR THE**
**COUNTY OF CIBOLA, CORECIVIC, and**
**JOHN/JANE DOE 1-18, individually and in their**
**official capacities as employees of Cibola County**
**Correctional Center and/or CoreCivic,**

**Defendants.**

### PLAINTIFF'S FIRST AMENDED COMPLAINT FOR NEGLIGENCE, CIVIL RIGHTS VIOLATIONS, NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION, <u>LOSS OF CONSORTIUM, SPOLIATION, AND PUNITIVE DAMAGES</u>

COMES NOW, Plaintiff Monique Pena, individually and as Personal Representative of the

Wrongful Death Estate of Matthew Pena, deceased, by and through her attorneys of record, Bridget

Hazen (Weems Hazen Law, LLC), and Nicholas T. Davis (Davis Law New Mexico), and brings

this Complaint for civil rights violations pursuant to the Fourteenth Amendment of the Constitution

of the United States 42 U.S.C. § 1983, and the New Mexico Tort Claims Act, NMSA 1978, §§ 41-

4-1 et seq. As grounds for this Complaint, Plaintiff states as follows:

### PARTIES, JURISDICTION AND VENUE

1.  Plaintiff is a resident of Cibola County, New Mexico.

2.  All acts complained of herein occurred in Cibola County, New Mexico.

1

3. Jurisdiction and venue are proper over the parties and their respective employees pursuant to 28 U.S.C. § 1331, NMSA § 41-4-1 (1978) *et seq.*, including sections § 41-4-6 (operation of a building) and § 41-4-12 (deprivation of rights under state and federal constitution).

4. Plaintiff is court-appointed Personal Representative of the Wrongful Death Estate of Matthew Pena, deceased (herein "Decedent") and was the mother of Decedent during his lifetime.

5. At all times material hereto, Decedent was a resident of New Mexico, being held in Cibola County, New Mexico.

6. At all times pertinent to this Complaint, Decedent was in and under the direct and continuous custody, control, and supervision of Defendants.

7. Cibola County Correctional Center is a detention center located in Cibola County, New Mexico.

**Defendant Board of County Commissioners of Cibola County**

8. Defendant Board of County Commissioners for the County of Cibola (hereinafter, referred to as 'Cibola County" or County") is a local government entity organized and existing under the law of the State of New Mexico and is a "person" subject to suit herein. By state statute, the powers of Cibola County as a body politic and corporate are exercised by the Board. The County governs Cibola County Correctional Center, while independent contractors carry out discrete duties at the direction of the County. The County is responsible for the policies, customs and practices at the Cibola County Correctional Center. The County assumes the risks incidental to the maintenance of the Correctional Center, and the employment of its law enforcement officers.

9. At all times pertinent hereto, Defendant County acted through its owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, and other staff/personnel and are responsible for their acts or omissions.

10. Defendant Cibola County operated and/or contracted with others, including Defendant CoreCivic, to operate the Cibola County Correctional Center in the State of New Mexico at all relevant times.

**Defendant CoreCivic**

11. Upon information and belief, Defendant CoreCivic operated the Cibola County Correctional Center at all relevant times.

12. By virtue of a contractual relationship with Cibola County to provide penological services, such as custody and supervision to detainees housed there, CoreCivic is a state actor and may be sued for constitutional violations pursuant to 42 U.S.C § 1983. *See Smith v. Cochran*, 339 F.3d 1205, 1215-16 (10th Cir. 2003) ("persons to whom the state delegates its penological functions, which include the custody and supervision of prisoners, can be held liable for violations of the Eighth Amendment"); *see also Phillips v. Tiona*, 508 Fed. Appx. 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by detainees"); *Tavasci v. Cambron*, No. CIV 16-0461 JB/LF, 2017 U.S. Dist. LEXIS 82649, at *72 (D.N.M. May 31, 2017) (holding that private corporation managing a correctional facility under contract with the State of New Mexico are "persons" subject to suit under § 1983). The federal constitutional claims are brought against CoreCivic in its individual capacity.

13. Upon information and belief, Defendant CoreCivic is a publicly traded corporation incorporated in the State of Maryland and doing business in the state of New Mexico as more particularly described herein.

**Defendant Employees**

14. At all material times, Defendants John/Jane Does were residents of New Mexico.

15. At all material times, Defendants John/Jane Does were employees of Cibola County and/or CoreCivic and were acting in the course and scope of their employment.

16. At all material times, Defendant Cibola County was responsible for the policies, practices and customs of the Correctional Center. Defendant Cibola County was responsible for the safekeeping of detainees and ensuring that others did not violate the constitutionally protected rights of detainees while they were entrusted to Cibola County or contractors, and agents, to include Defendant CoreCivic. Defendant Cibola County was responsible for ensuring that Cibola County and its contractors complied with federal and state laws. Defendant Cibola County is also responsible for the hiring, screening, training, retention, supervision and discipline, counseling and control of the employees of the detention center, including employees John/Jane Doe named as defendants herein.

17. Upon information and belief, Defendants John/Jane Does I (law enforcement) were employees of Cibola County. With regard to Plaintiff's 42 U.S.C § 1983 claims, Defendant John/Jane Does I are sued in their individual capacity and were acting under the color of state law in the course and scope of their employment and were residents of the State of New Mexico. Plaintiff will amend her complaint to add the true identities of these defendants once they are discovered.

18. Defendants John/Jane Doe were law enforcement officers within the meaning of NMSA § 41-1-12 (1978).

19. Immunity is waived for the actions described herein under NMSA § 41-4-1 (1978) *et seq.*, including sections § 41-4-6 (operation of a building) and § 41-4-12 (deprivation of rights under state and federal constitution).

20. A Notice of Claim was delivered pursuant to § 41-4-16 (1978).

21. This Court has jurisdiction over the parties and subject matter.

22. Venue is proper.

### PRELIMINARY ALLEGATIONS

23. Plaintiff's claims arise from the wrongful death of Decedent while under the care and custody of the defendants at Cibola County Correctional Facility in Milan, New Mexico on or about January 26, 2021.

24. At all times material hereto, Cibola County Correctional Center and CoreCivic had a policy and practice of cutting costs by understaffing and providing inadequate training to its correctional officers.

25. At all times material hereto, Cibola County Correctional Center and CoreCivic had a policy and practice of inadequately screening, classifying, and monitoring detainees for medical and mental emergencies.

26. At all material times hereto, the individually named defendants were employees and/or agents of Cibola County Correctional Center and/or CoreCivic and were acting within the course and scope of their employment and/or agency.

27. All tortious conduct of individually named defendants hereinafter alleged is imputed to Cibola County Correctional Center and CoreCivic as a matter of law.

**FACTUAL BACKGROUND**

28. Upon information and belief, on or about January 14, 2021, Decedent was admitted to the Turquoise Lodge Hospital for drug rehabilitation, wherein he stated he had recently began engaging in self-harm.

29. Decedent withdrew himself from Turquoise Lodge Hospital on January 14, 2021 into the care and custody of his family.

30. On or about January 23, 2021, the Grants Police Department was contacted by members of Decedent's family due to concerns regarding Decedent's behavior. Decedent's family was concerned about Decedent's suspected use of narcotics and resulting behavior. Decedent was taken into protective custody by the responding police officers for his concerning conduct.

31. Upon information and belief, Decedent was booked in the Cibola County Correctional Center on or about January 24, 2021.

32. An initial screening was performed to determine Decedent's custody classification level and required degree of supervision and management.

33. At the time of his screening, Decedent stated that he was a daily fentanyl who used 60 mg per day and was, at that time, under the influence.

34. Given Decedent's report of being under the influence and his reported level of daily usage, Decedent should have been classified as high-risk and placed into housing where he could receive medical observation when he would inevitably begin the suffer the effects of withdrawal.

35. Instead, Decedent was classified for General Population and placed into a 14-day restrictive quarantine pursuant to covid precautions.

36. Decedent was housed in a single-occupancy cell.

37. Decedent did not receive the oversight, treatment, and attention from Center personnel that he required given his physical and mental state.

38. On or about January 26, 2021, Decedent, while isolated in his cell, began to experience the severe effects of withdrawal and committed suicide by hanging.

39. Defendants, individually and collectively, were responsible for accurately assessing Decedent's risk level during his initial screening and assigning his housing accordingly.

40. Defendants failed to accurately assess Decedent's risk level during the initial screening and by placing him into the general population instead of into restrictive housing where he could be medically observed for signs of detoxification and withdrawal.

41. By failing to accurately assess Decedent's risk level and subsequently placing him into the general population instead of into restrictive housing, Defendants created the opportunity for self-harm to occur.

42. Defendants, individually and collectively, were responsible for monitoring Decedent's cell to foresee and eliminate opportunities for self-harm, especially given his physical and mental state.

43. By failing to monitor Decedent, Defendants created the opportunity for self-harm to occur.

44. Defendants, individually and collectively, showed a lack of care for the safety and welfare of Decedent, in derogation of duties owed to him.

45. Defendants showed a wanton disregard for the safety and security of detainees in their custody and care, including Decedent.

46. Cibola County Correctional Facility had two (2) cameras in the pod which housed Decedent and cameras in the intake area where Decedent was evaluated by security and medical to ascertain his ability to be booked into the facility.

47. Cibola County Correctional Facility had a policy or custom to maintain its digitally stored video footage for approximately ninety (90) days before the storage system "overwrites" the footage.

48. Upon information and belief, there existed recordings or images of an audio, video, and photographic nature of Decedent during his entire time at Cibola County Correctional Facility.

49. On February 9, 2021, Plaintiff sent Defendants Board of County Commissioners of Cibola County and Core Civic a letter pursuant to the Tort Claims Act requesting that they "preserve all documents, photograph communications, log files, reports, or any other evidence whatsoever related to Mr. Pena from the time of his arrival at the Cibola County Correctional Center."

50. On February 9, 2021, Plaintiff sent Defendants Cibola County and CoreCivic a letter pursuant to the Freedom of Information Act requesting "any and all records, videos or photographs [they] have regarding Mr. Pena from January 1, 2021 to the present."

51. On December 19, 2022, Plaintiff sent Defendants Cibola County and CoreCivic its First Set of Interrogatories and Requests for Admission, which contained requests for information pertaining to video surveillance of Decedent and for the video footage itself.

52. Defendants objected to the requests as unduly burdensome and only provided footage from cameras that they deemed as "likely" to have captured Decedent.

53. Defendants also cited their video retention policy, which requires that incident-related video be downloaded and stored separately and argued that it would be unduly burdensome for them to retain all footage of Decedent from his two days at the facility.

54. Upon information and belief, after receiving notice of Plaintiff's intent to bring a claim, Defendants affirmatively allowed video footage depicting Decedent to be overwritten, thus making it unavailable to Plaintiff.

### COUNT I: §1983 FAILURE TO TRAIN AND SUPERVISE CAUSING VIOLATION OF CONSTITUTIONAL RIGHTS

55. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

56. Defendants are persons under 42 U.S.C. § 1983.

57. The acts and omissions of Defendants were conducted within the scope of their official duties and employment.

58. At all times relevant to the allegations in this Complaint, Defendants acted under color of state law.

59. Defendants acted pursuant to policy and custom, with reckless disregard for Decedent's right not to be subjected to serious dangers created by and under the control of the Defendants.

60. Decedent was, at all material times, under the care, control and custody of Defendants and Defendants had a non-delegable duty to ensure the safety of all persons under their direct care, control and custody, including Decedent.

61. Implicit in Defendants' role to provide basic human needs is the foreseeability that failure to do so is likely to result in significant harm to a detainee, such as Decedent.

62. Defendant Cibola County hired Defendants John/Jane Does knowing they lacked the requisite experience and training necessary to properly screen, classify, and monitor detainees based on their physical and mental health, thereby creating an unreasonable risk of harm to Cibola County Correctional Center detainees, such as Decedent.

63. It was foreseeable that Defendants' failure to adequately train and supervise Defendants John/Jane Does was likely to result in safety violations and the deprivation of a detainee's Fourteenth Amendment rights.

64. Defendants knew or should have known that failure to properly staff the facility, including proper hiring, training and supervision, would have life-threatening consequences to the detainees housed there, such as Decedent.

65. Defendants' acts and omissions were pursuant to policy and custom of providing inadequate training to screen, classify and monitor detainees that violated the Constitutional rights of Decedent.

66. Defendants' acts and omissions pursuant to policy and custom indicates Defendants' deliberate indifference to the health and safety of the detainees at Cibola County Correctional Center.

67. The actions and omissions of the Defendants as described herein intentionally deprived Decedent of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused him other damages as set forth with greater particularity herein.

68. Defendants promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused the complained of constitutional harm, and acted reckless disregard for the rights of Decedent as secured by the Constitution.

69. As a proximate result of the Defendants' acts and omissions as stated with greater specificity herein, Decedent was harmed.

70. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages.

## COUNT II: 1983 FOURTEENTH AMENDMENT
## VIOLATION OF DUE PROCESS

71. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

72. In the Tenth Circuit, a pretrial detainee's due process rights under the Fourteenth Amendment parallel that of an inmate's Eight Amendment rights: "Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment . . . In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999).

73. Jail officials have a responsibility to take "reasonable measures to ensure the safety of inmates" and detainees. *LeMaster*, 172 F.3d 756, 763. "In fact, the due process rights of a person in [this] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. at 244, 103 S.Ct. 2979.

74. Detention facilities violate the Eight Amendment's prohibition against cruel and unusual punishment if they cause unquestioned and serious deprivations of basic human needs that deprive detainees of the minimal civilized measure of life's necessities. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

75. The government assumes responsibility for satisfying basic human needs such as food, clothing, shelter, medical care, and reasonable safety when it takes a person into custody

11

against his or her will.

76. By and through the actions described above, Defendants violated Decedent's due process rights by violating the Eighth Amendment right to be free from cruel or unusual punishment. In particular, Defendants violated Decedent's right to be afforded a reasonable degree of safety from serious bodily injury and death.

77. Defendant CoreCivic, both on its own and through its officers, administrators, agents and employees, had an official policy, custom, or practice that was deliberately indifferent to Decedent's Fourteenth Amendment rights.

78. The acts and omissions of Defendants were the legal and proximate cause of Decedent's wrongful death.

79. Defendant's unconstitutional policies, customs, or practices as described herein were the legal and proximate cause of Decedent's wrongful death.

80. The acts and omissions of Defendants as described herein intentionally deprived Decedent of the securities, rights, privileges, liberties and immunities secured by the Constitution of the United States of America and caused his wrongful death.

81. Defendants Cibola County and CoreCivic are liable for the negligence of their employees, staff, contractors and other agents, including Defendants John/Jane Does.

82. Defendants had the duty to ensure the health and safety of Decedent and such duty is a nondelegable duty.

83. As a result of Defendants' acts and omissions, Plaintiff suffered damages as set forth with greater particularity herein.

84. Defendants had a custom, policy, or practice of knowingly and with deliberate indifference failing to properly screen, classify, and monitor detainees.

85. Defendants acted, pursuant to policy and custom, with reckless disregard for Plaintiff's right not to be subjected to serious dangers created by and under the control of the Defendants.

86. Defendants knew, or should have known, that by failing to properly screen, classify, and monitor detainees, they were placing detainees at a risk of harm, especially detainees with substance abuse or mental health disorders such as Decedent.

87. Nonetheless, with deliberate indifference to Plaintiff's Fourteenth Amendment due process right to be free from cruel and unusual punishment, Defendants allowed for the conditions left Plaintiff vulnerable to harm.

## COUNT III: NEGLIGENCE

88. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

89. All Defendants herein had a duty of ordinary care to maintain a reasonably safe environment for detainees, complete with adequate security and supervision necessary to prevent foreseeable attempts of self-harm.

90. Defendants breached that duty by failing to properly screen, classify, and monitor detainees.

91. As a direct and proximate result of their breach, Decedent, who was a harm to himself, was placed in a harmful situation.

92. As a direct and proximate result for Defendants' negligence, Plaintiff suffered damages.

## COUNT IV: NEGLIGENT HIRING, TRAINING AND SUPERVISION

93. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

13

94. Defendants were negligent in the hiring, training and supervision of Cibola County Correctional Center employees who failed to adequately screen, classify, and monitor detainees.

95. Defendants' negligence includes all things stated herein but is not limited to:

    a.   Inadequate mental health screenings of detainees upon intake;

    b.   Inadequate drug screenings of detainees upon intake;

    c.   Inadequate classification of detainees based on risk factor(s); and

    d.   Inadequate monitoring of detainees.

96. Defendants knew or should have known that the lack of supervision, experience and training among their employees was likely to harm Cibola County Correctional Center detainees.

97. The negligence of Defendants directly and proximately caused Decedent's wrongful death.

98. As a direct and proximate result of the intentional, willful, reckless or negligent acts and omissions of Defendants and their employees and agents, Plaintiff suffered damages.

## COUNT V: NEGLIGENT OPERATION OF A BUILDING

99. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

100. Defendants negligently failed to provide reasonably adequate security to detainees at Cibola County Correctional Center. That failure resulted in a danger to detainees beyond the reasonable and expected risks of prison life.

101. By committing the acts and omissions described above, Defendants breached their duty to operate and maintain the Cibola County Correctional Center in a manner that prohibits unreasonable or unexpected dangers to detainees.

102. Defendants' breach of duty was a cause-in-fact and proximate cause of harm to Plaintiff.

103. Immunity is waived for Defendant Cibola County's negligence under NMSA § 41-4-6.

### COUNT VI: INTENTIONAL SPOLIATION OF EVIDENCE

104. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

105. Following Decedent's death, there existed a potential lawsuit between Plaintiff and Defendants.

106. Defendants had knowledge of a potential lawsuit.

107. Despite knowledge of the potential suit, Defendants destroyed, mutilated, or significantly altered potential evidence relevant to this lawsuit.

108. Defendants destroyed, mutilated, or significantly altered potential evidence with the intent of disrupting or defeating this lawsuit.

109. The disposal or destruction of evidence has affected Plaintiff's ability to prove her case.

110. As a direct and proximate result of Defendants' spoliation, Plaintiff suffered damages.

### DAMAGES

111. Plaintiff adopts and incorporates all other paragraphs of this Complaint for purposes of this claim.

112. As the direct and proximate result of the breaches and violations by Defendants, Plaintiff suffered damages.

113. The conduct of Defendants Cibola County and CoreCivic, as well as their employees, were willful,

wanton, and in reckless disregard to the rights of the Plaintiff and punitive damages should be awarded.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment jointly and severally against all Defendants on all claims;

2. Monetary damages, including punitive damages, in an amount to be determined at trial;

3. An award of attorney's fees, costs and expenses in bringing this lawsuit; and

4. All other relief that law and justice require.


Respectfully Submitted,

WEEMS HAZEN LAW

*/s/ Bridget Hazen*
Bridget Hazen
Dathan Weems
106 Wellesley Drive SE
Albuquerque, New Mexico 87106
Phone: (505) 247-4700
bridget@weemshazenlaw.com
dathan@weemshazenlaw.com


DAVIS LAW NEW MEXICO

*/s/ Nicholas T. Davis*
Nicholas T. Davis
1000 Lomas Blvd. NW
Albuquerque, New Mexico 87102
Phone: (505) 242-1904
nick@davislawnm.com

*Attorneys for Plaintiff Monique Pena*