## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MONIQUE PEÑA, Individually and
as Personal Representative of the Wrongful
Death Estate of Matthew Peña, Deceased,

     Plaintiff,

v.                                           No. 1:22-cv-516-MIS/KK

BOARD OF COUNTY COMMISSIONERS FOR THE
COUNTY OF CIBOLA, CORECIVIC, INC. and WARDEN
LUIS ROSA, JR., MIKIELE MONTANO, JORDAN
CASAMERO, BENNIE MARIA, JR., LAVERA JAMES,
ALONZO ROMERO, JENS REUHRUP, and RUBIN
SAAVEDRA,

     Defendants.

## ORDER PARTIALLY GRANTING DEFENDANTS' MOTIONS TO DISMISS AND REMANDING CASE

**THIS MATTER** is before the Court on two Motions to Dismiss Plaintiff's Second Amended Complaint, ECF No. 122: one from Individual Defendants Jordan Casamero, Lavera James, Bennie Maria, Jr, Mikiele Montano, Alonzo Romero, Luis Rosa Jr., and Rubin Saavedra, ECF No. 128; and one from Defendants Board of County Commissioners of Cibola County and CoreCivic, Inc., ECF No. 137. Defendant Jens Reuhrup joined the latter motion to dismiss. ECF No. 153. Plaintiff Monique Peña responded to each motion, respectively, ECF Nos. 132, 145, and Defendants replied, respectively, ECF Nos. 139, 147.

Upon review of the parties' submissions, the record, and the relevant law, Defendants Rosa, Saavedra, Montano, Casamero, Maria Jr., James, and Romero's Motion to Dismiss, ECF No. 128, is **GRANTED** as to Counts I and II; and Defendants CoreCivic and Cibola County's Motion to Dismiss, ECF No. 137, is **GRANTED** as to Counts I and II. This case is further **REMANDED** to the Thirteenth Judicial District Court for the County of Cibola, New Mexico.

## I.  **BACKGROUND**

Plaintiff Monique Peña ("Plaintiff") brings this case as personal representative of the estate of her deceased son, Matthew Peña ("Peña"). The relevant facts alleged in Plaintiff's Second Amended Complaint ("Complaint") are as follows:

On January 14, 2021, Matthew Peña entered a drug detoxification program at the Turquoise Lodge Hospital. Compl. (ECF No. 122) ¶ 28. Peña soon began to experience severe withdrawal symptoms. *Id*. ¶ 29. Staff at the hospital determined that Peña required a program of partial hospitalization and intensive detoxification treatment. *Id*. ¶ 30. That same day, against medical advice, Peña checked himself out of the hospital and into the custody of his family. *Id*. ¶ 31.

On January 23, 2021, Matthew Peña's family members contacted the Grants Police Department out of concern for Peña's behavior "connected to his drug addiction disorder." *Id*. ¶ 32. That evening, police took Matthew to the Cibola County Correctional Center ("CCCC"). *Id*. ¶ 33.[1] CCCC is operated by Defendant CoreCivic and located in Cibola County, New Mexico. *Id*. ¶¶ 3, 13. When Peña arrived at CCCC, Defendant Mikiele Montano, a detention officer employed by CoreCivic, conducted an initial security screening "to determine . . . Peña's custody classification level and required degree of supervision and management." *Id*. ¶ 18, 34. Defendant Jens Reuhrup, a nurse employed by CoreCivic, conducted a medical screening, during which Peña identified himself as suffering from a fentanyl substance disorder; as being under the influence of fentanyl during the screening; and as having used fentanyl daily "for more than a year." *Id*. ¶ 36.

---

[1] Neither Plaintiff nor Defendants identify the specific behavior for which Peña was arrested.

Over the next three days, Peña was "placed in isolation for at least sixty hours[.]" *Id*. ¶ 39. Peña spent at most ninety minutes outside of his cell during that period. *Id*. ¶ 65. Four detention officers employed by CoreCivic worked the shifts from the period of Peña's detention until his death: Defendants Jordan Casamero, Bennie Maria Jr., Alonzo Romero, and Lavera James. *Id*. ¶ 78. Many of Plaintiff's claims hinge on the actions—or lack thereof—taken by detention officers during this period and are discussed *infra*.

On January 26, 2021, Peña tragically committed suicide, hanging himself in his cell. *Id*. ¶ 43. Plaintiff now brings numerous claims against various Defendants: CoreCivic and the Board of County Commissioners of Cibola County ("Cibola County"); individual Defendants Reuhrup, Montano, Casamero, Maria Jr., Romero, and James; and claims premised on supervisory liability against CCCC Warden Luis Rosa, Jr., and CCCC's Chief Medical Officer Dr. Rubin Saavedra.

In total, Plaintiff brings six counts: a failure to train and supervise claim pursuant to 42 U.S.C. § 1983 ("Count I"); a violation of Due Process under the Fourteenth Amendment pursuant to § 1983 ("Count II"); a claim for negligence ("Count III"); a claim for negligent training, hiring, and supervision ("Count IV"); a claim for negligent operation of a building ("Count V"); and a claim for intentional spoliation of evidence ("Count VI"). Plaintiff's first two claims arise under federal law. Counts III-VI arise under New Mexico state law.

Defendants Montano, Casamero, Maria Jr., Romero, James, Saavedra, and Rosa, Jr. together filed a motion to dismiss. ECF No. 128. Defendants CoreCivic and Cibola County also filed a motion to dismiss, later joined by Defendant Reuhrup. ECF Nos. 137, 153. All Defendants move to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.   <u>STANDARD OF REVIEW</u>

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff has failed to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim is facially plausible when the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Further, while reviewing courts "must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (internal citations omitted). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id.* at 679.

## III.   <u>ANALYSIS</u>

Plaintiff brings six counts: a failure to train and supervise claim pursuant to 42 U.S.C. § 1983 ("Count I"); a violation of Due Process under the Fourteenth Amendment pursuant to § 1983 ("Count II"); a claim for negligence ("Count III"); a claim for negligent training, hiring, and supervision ("Count IV"); a claim for negligent operation of a building ("Count V"); and a claim for intentional spoliation of evidence ("Count VI").

Counts I and II arise under federal law. Counts III-VI arise under New Mexico state law. This Court has original jurisdiction over Plaintiff's claims which arise under the Constitution and

federal law. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's concurrent state law claims. 28 U.S.C. § 1367.

### A.  Plaintiff's federal claims against individual defendants

#### 1.  Count I fails to state a claim against Defendants Rosa and Saavedra

Plaintiff levels § 1983 claims for failure to train and supervise against individual Defendants Rosa and Saavedra,[2] allegedly "the respective policy makers for security and medical at [CCCC]." Compl. ¶ 116.

Count I is nominally premised on two distinct violations: a failure to train and a failure to supervise. *See* Compl. ¶¶ 137-54. However, Plaintiff makes no factual allegations regarding the deficient supervision *of CCCC employees by Defendants*. Where deficient supervision is alleged, it relates to the deficient supervision *of Peña by CCCC employees*—a distinct form of deficient supervision unrelated to "failure to supervise" as a term of art in the § 1983 context. The Court thus dismisses the failure to supervise element of Count I and analyzes Count I solely as a claim for failure to train.

When suing supervisory defendants under § 1983, plaintiffs "must show an 'affirmative link' between the supervisor and the constitutional violation." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)). This can be demonstrated if the Plaintiff plausibly alleges three elements: (1) personal involvement; (2) causation, and (3) culpable state of mind. *See id.*

---

[2] In the Motion to Dismiss filed by all individual Defendants, those individual Defendants in non-supervisory roles (all except Defendants Rosa and Saavedra) argue that Count I also fails to state a claim against the group they term "Employee Defendants." *See* ECF No. 128 at 8. But Plaintiff does not make any allegations regarding a failure to train and/or supervise against those Defendants. To the contrary, Plaintiff expressly names only Defendants CoreCivic, Cibola County, Rosa, and Saavedra as responsible for those policies challenged in Count I. *See* ECF No. 122 at ¶ 140. The Court thus does not address Count I as it may pertain to any Defendants other than those four.

As to the required element of personal involvement, Plaintiff makes no allegations regarding the personal involvement of either Defendant Rosa or Saavedra in the series of events leading up to Peña's death. While this failure alone would necessitate the dismissal of Plaintiff's claim against Defendants Rosa and Saavedra, Plaintiff also fails to satisfy the other two elements required for her claim to advance.

As to the second element, "[a] plaintiff [must] establish the 'requisite causal connection' by showing 'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.'" *Id.* at 768 (quoting *Dodds*, 614 F.3d at 1185).

However, for Plaintiff to successfully allege causation of a constitutional violation, she must first plausibly allege that a constitutional violation has taken place. *See, e.g.*, *Lindsey v. Hyler*, 918 F.3d 1109, 1116–17 (10th Cir. 2019) (rejecting a failure-to-train claim against a municipality upon concluding there was no underlying constitutional violation by the named officer); *see also Est. of Burgaz ex rel. Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty., Colo.*, 30 F.4th 1181, 1196 (10th Cir. 2022) (Matheson, J., concurring) (applying the underlying-constitutional-violation requirement to a claim against an individual supervisory defendant). As discussed *infra*, Plaintiff has not successfully pleaded a constitutional violation against any individual Defendant. Plaintiff has thus not cleared this hurdle.

Third, Plaintiff must plead facts demonstrating that Defendants Rosa and Saavedra possessed the appropriate state of mind required to establish liability. Plaintiff has not done so. "Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings." *Schneider*, 717 F.3d at 769 (citing *Iqbal*, 556 U.S. at 676). Damningly for Plaintiff, "supervisory-liability in the inmate-suicide context requires the prison official to have

had *actual knowledge* of an individual inmate's substantial risk of suicide." *Dominguez v. Crow*, No. 20-317-JWB, 2022 WL 3370768, at *4 (E.D. Okla. Aug. 11, 2022) (citing *Cox v. Glanz*, 800 F.3d 1231, 1249 (10th Cir. 2015)) (emphasis added). Plaintiff makes no allegations regarding any actual knowledge of Peña's incarceration or even existence against either Defendant Rosa or Saavedra.

In sum, Plaintiff has failed to successfully plead any of the elements required for a claim against individual supervisory defendants for failure to train and supervise pursuant to § 1983. Count I as alleged against Defendants Rosa and Saavedra is therefore **DISMISSED**.

### 2.   Count II fails to state a claim against any individual defendant

In Count II, Plaintiff levels claims against all Defendants, alleging that various acts and omissions by all parties resulted in a violation of Peña's due process rights. *See* Compl. ¶¶ 155-76. All Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). *See* ECF No. 137 at 1;[3] ECF No. 128 at 1. As to the individual Defendants, the Court finds that Plaintiff fails to plead the necessary elements of a claim against any individual Defendant.

### a.   Law regarding Count II as alleged against individual defendants

Plaintiff identifies Peña, at the time of his detention, as a pretrial detainee. *See* ECF No. 145 at 3. "Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment. In determining whether [a plaintiff's] rights were violated, however, [the Tenth Circuit applies] an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Lopez*, 172 F.3d at 759 n.2.

---

[3] At one point, Defendants CoreCivic and Cibola County argue that "Plaintiff merely alleges that Decedent was a drug addict[.]" *See* ECF No. 137 at 7. The phrase "drug addict" appears nowhere in Plaintiff's Second Amended Complaint. Given the myriad other options available to Defendants when referencing an individual who committed suicide while under their care—such as "was addicted to drugs," "was a habitual user of drugs," "suffered from an addiction to drugs," etc.—the Court finds this derogatory framing distasteful.

"An official violates the Eighth Amendment when two elements are met: (i) the official causes an injury that, objectively, is 'sufficiently serious,' i.e., an injury that equates to the 'denial of the minimal civilized measure of life's necessities'; and (ii) the official has a 'sufficiently culpable state of mind.'" *Glover v. Gartman*, 899 F. Supp. 2d 1115, 1134 (D.N.M. 2012) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

As to the first prong of the analysis, the Tenth Circuit has emphasized that death is, "without doubt, sufficiently serious to meet the objective component[.]" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Sister circuits have also expressly held that a prisoner's suicide meets the definition of a sufficiently serious harm. *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) ("[I]t goes without saying that suicide is a serious harm."). Peña's death unquestionably qualifies as an objective harm.

As to the subjective element of the analysis, "in order for any defendant . . . to be found to have acted with deliberate indifference, he needed to first have knowledge that the specific inmate at issue presented a substantial risk of suicide." *Cox*, 800 F.3d at 1250. He must then disregard that risk. *See Est. of Burgaz*, 30 F.4th at 1186 (citing *Redmond v. Crowther*, 882 F.3d 927, 939-40 (10th Cir. 2018)).

**b.  Application of the law against all individual defendants**

Plaintiff makes several claims in support of the allegation that Peña presented a substantial risk of suicide. She argues that Peña "had a known history of self-harm; he was placed into protective custody by police officers for his self-destructive behavior; he was under the influence of fentanyl at the time of his medical screening; and he was going through serious drug withdrawals." ECF No. 145 at 5. But as Defendants CoreCivic and Cibola County note, "the Complaint is void of any allegation (or reasonable inference) that Decedent had a 'known

history of self-harm,' that police officers placed him into protective custody due to 'self-destructive behavior,' or that any facility staff had knowledge of these alleged facts." ECF No. 147 at 4. The Court agrees.

Nevertheless, as the Supreme Court has held, "a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). In other words, while "the rigorous deliberate indifference standard requires knowledge that an inmate is suicidal[,]" that requirement may be satisfied when a risk "is so obvious and substantial that knowledge can be inferred." *Gaston v. Ploeger*, 229 F. App'x 702, 712 (10th Cir. 2007).

In the case of Defendant Casamero, the facts as alleged do not demonstrate that the risk of Peña committing suicide was so obvious to Defendant Casamero that his knowledge of that risk can reasonably be inferred. Specifically, Plaintiff alleges that Defendant Casamero witnessed Peña "pacing in his cell, sweating, and . . . appearing despondent[,]" and "identified Matthew Peña's behavior and presentation as being consistent with substance withdrawal, according to his training[.]" *Id.* ¶¶ 84-85.[4] As the officer monitoring Peña, Casamero also of course knew that Peña was alone in his cell. Finally, along with other CCCC officers, Defendant Casamero allegedly "observed signs of distress from Matthew Peña, including but not limited to verbal requests for help." *Id.* ¶ 79. In response to these observations, Defendant Casamero did nothing. *Id.* ¶ 88.

---

[4] "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Although the assertion that Defendant Casamero identified Pena as experiencing substance withdrawal borders on conclusory, Plaintiff simultaneously asserts that Defendant Casamero had received training on the signs and symptoms of substance withdrawal. The Court finds that latter assertion provides sufficient factual support for an inference that Defendant Casamero recognized Pena as experiencing substance withdrawal. The Court thus differentiates this allegation from Plaintiff's claim that Defendant Casamero "believed Plaintiff was detoxing[,]" Compl. ¶ 86, which is conclusory.

Defendant Casamero's inaction may be condemnable as a general matter. However, these limited facts cannot support an inference that Defendant Casamero was aware that Peña presented a substantial risk of suicide. At no point does Plaintiff allege that Peña demonstrated suicidal ideation or any desire to commit self-harm. And a failure to act when faced only with the "common signs of withdrawal" does not incur liability under § 1983, absent additional indicia of imminent harm. *See Quintana v. Santa Fe Cnty. Bd. of Comm'rs,* 973 F.3d 1022, 1030-31 (10th Cir. 2020) (distinguishing knowledge of "common signs of withdrawal" from knowledge of "serious withdrawal" creating "a substantial risk of serious harm") (citation omitted).

Plaintiff also alleges that the other Defendant officers, Maria Jr., Romero, and Lavera, "either observed [the same] symptoms and behaviors or failed to adequately monitor Matthew Peña such that they could not observe the obvious symptoms and behaviors, identified in their policies, as symptomatic of suicide-risk." Compl. ¶ 87. These two hypothetical scenarios can be distinguished from those allegations against Defendant Casamero, and neither proposed scenario contains facts sufficient to establish liability.

If the other Defendant officers witnessed the same symptoms as Defendant Casamero, Peña's mere expression of distress alone cannot support the inference that he presented an obvious substantial risk of suicide. And while Plaintiff clearly identifies Defendant Casamero as having received training on substance withdrawal, *id*. ¶ 85, he makes no comparably clear allegations as to the other officers, *id*. ¶ 88 ("Contrary to policy and the substance withdrawal trainings *officers like Defendant Casamero participated in*, none of the defendant detention officers conveyed any of their observations or concerns to either the medical or mental health staff.") (emphasis added). Turning to Plaintiff's alternative scenario, in which the other named officers failed to accurately observe Peña, those officers could not have had knowledge that he

presented a substantial risk of suicide because they would have had no knowledge of Peña's state of mind at all.

Plaintiff has thus not plausibly alleged facts which, if taken as true, demonstrate that any of Defendants Maria Jr., Romero, or Lavera were presented with the "obvious" risk of Peña's committing suicide.

As to Defendant Reuhrup, Plaintiff's operative Complaint alleges that Defendant Reuhrup was made aware of Peña's (1) being on fentanyl at the time of his health screening; (2) being a daily user of fentanyl; and (3) regularly using fentanyl for "more than a year." *Id*. ¶ 36. These allegations certainly demonstrate an obvious risk that Peña faced imminent substance abuse withdrawal. However, as noted, knowledge that a detainee is experiencing withdrawal does not necessarily equate to knowledge of the risk of serious harm. *See Quintana*, 973 F.3d at 1030-31. Yet the Second Amended Complaint makes no additional allegations, beyond Defendant Reuhrup's knowledge of Peña's fentanyl usage, in support of an inference that Peña presented a substantial suicide risk. Plaintiff has thus not pleaded facts demonstrating an obvious substantial risk that Peña would commit suicide, let alone one surpassing the "very high" threshold for obviousness required. *Gaston*, 229 F. App'x at 710.

As to Defendant Montano, Plaintiff alleges that "Montano failed to convey the information known to [him] regarding Matthew Peña's agitated state throughout the day and leading up to his arrest, along with his addict-level usage of opioids, to anyone at the facility monitoring . . . Peña." Compl. ¶ 181. This allegation, however, conflicts with Plaintiff's claim that "Peña's substance use, currently being under the influence, and eminent withdrawal was information that Defendant Reuhrup did not convey to Defendant Montano." *Id*. ¶ 76. As to what Plaintiff plausibly alleges Defendant Montano knew, the Court is left only with the allegation

11

that "[a]n initial screening was performed by Defendant Montano to determine Matthew Peña's custody classification level and required degree of supervision and management." *Id.* ¶ 34. Plaintiff does not allege that Peña communicated his fentanyl usage and impending withdrawal to Montano during that screening, but rather that Peña only communicated such information during the medical screening conducted by Defendant Reuhrup. *Id.* ¶ 36. Further—as is the case for Defendant Reuhrup—even if Defendant Montano *were* aware of Peña's facing the risk of imminent withdrawal, knowledge of substance abuse withdrawal alone is insufficient to demonstrate awareness of a substantial risk of suicide. Plaintiff has thus failed to plausibly allege facts supporting an inference that Montano knew that Peña presented a substantial risk of suicide. Count II as leveled against Defendant Montano is therefore dismissed.

As to Defendants Rosa and Saavedra, both of whom are sued in their supervisory roles, the same principles articulated in the failure to train context apply: namely, Plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation." *Schneider*, 717 F.3d at 767 (quoting *Dodds*, 614 F.3d at 1195). This can be demonstrated if the Plaintiff plausibly alleges three elements: (1) personal involvement; (2) causation, and (3) culpable state of mind. *Id.*

Plaintiff fails to satisfy any of these three elements: (1) she makes no allegations regarding Defendants Rosa and Saavedra's personal involvement in Peña's care; (2) she does not allege an underlying constitutional violation, making an allegation of causation an impossibility; and (3) she makes no allegations regarding any actual knowledge of Peña's suicide risk against either Defendant Rosa or Saavedra. Given that, Plaintiff's Count II allegations against Defendants Rosa and Saavedra cannot be sustained.

In sum, Plaintiff has failed to plead facts which, even if taken as true, demonstrate that any individual Defendant acted with the requisite state of mind necessary to sustain a § 1983 claim against them under the Fourteenth Amendment. Count II as leveled against all individual Defendants is therefore **DISMISSED**.

### B.  Plaintiff's federal claims against institutional Defendants

Both Cibola County and CoreCivic are subject to the standard governing § 1983 claims for municipal liability. *See Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) ("[I]t is now well settled that *Monell* . . . extends to private defendants sued under § 1983.") (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003)).

Across numerous filings, Plaintiff's briefing on municipal liability under § 1983 is difficult to parse. In her Second Amended Complaint, Plaintiff scatters various claims regarding CCCC's allegedly deficient policies across both Counts I and II, despite Count I ostensibly addressing a failure to train and supervise and Count II ostensibly addressing distinct due process violations. For example, Plaintiff devotes numerous paragraphs in Count I to addressing Defendants' alleged "failure to properly staff the facility[,]" an allegation irrelevant to a § 1983 claim for failure to train. Compl. ¶¶ 145, 148. Plaintiff also alleges in Count II that "Defendants Cibola County and CoreCivic are liable for the negligence of their employees, staff, contractors and other agents," *id.* ¶ 167, a clear misstatement of the law. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983.").

In her Response to CoreCivic and Cibola County's Motion to Dismiss, ECF No. 145, Plaintiff further muddies the waters.[5] For instance, Plaintiff alleges that Defendants' policies violated Peña's due process rights—failing to specify whether she means Peña's substantive or procedural due process rights—in arguing that it is "plainly obvious" that "placing a detainee who is suicidal and going through substance withdrawals in an unsupervised, isolated cell will result in self harm." *See* ECF No. 145 at 8.  But *Barney v. Pulsipher*, 143 F.3d 1299 (10th Cir. 1998), which Plaintiff cites for the obviousness standard, is a case addressing the state of mind plaintiffs must allege when advancing claims for failure to train. That standard for liability is irrelevant to allegations about the conditions of Peña's confinement.

Further, Plaintiff does not clearly identify the actor responsible for CCCC's allegedly deficient policies. As to Cibola County, the Second Amended Complaint alleges that "[t]he County is responsible for the policies, customs and practices at the Cibola County Correctional Center[,]" as well as "for the hiring, screening, training, retention, supervision and discipline, counseling and control of the employees of the detention center[.]" *Id.* ¶¶ 6, 12.

These claims, however, conflict with numerous other allegations identifying CoreCivic as the party responsible for CCCC's policies, customs, and practices. These include: "Defendants Rosa and Saavedra [both CoreCivic employees] were the respective policy makers for security and medical at Cibola County Correctional Center[,]" *id.* ¶ 116; "Defendant CoreCivic . . . routinely fail[s] to sufficiently staff the facility in a way that would allow for [direct observation of inmates,]" *id.* ¶ 120; and that "Defendant Cibola County allowed Defendant CoreCivic to operate its facility, Cibola County Correctional Center, at the bare minimum requirements, to maximize corporate profit and minimize care of its inmates[,]" *id.* ¶ 136 (emphasis added).

---

[5] This is perhaps best demonstrated by Plaintiff collapsing her defense of Counts I and II into a single subsection. *See* ECF No. 145 at 3.

Plaintiff also specifically refers to CCCC as a CoreCivic facility: "Cibola County Correction Center was understaffed and among the CoreCivic facilities was particularly difficult to staff with local detention officers." *Id.* ¶ 109.

Despite Plaintiff's failure to delineate between distinct § 1983 violations, misleading invocation of controlling law, and confusing assignation of responsibility for CCCC's policies and practices, the Court nevertheless interprets the Complaint's factual allegations in the light most favorable to Plaintiff. *See Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citing *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

As such, the Court analyzes Plaintiff's claims as leveled against both CoreCivic and Cibola County, unless otherwise specified, and analyzes Plaintiff's Counts I and II as distinct allegations for, respectively, (1) a failure to train and (2) various due process violations.

### 1.  Count I[6]

As a threshold matter, § 1983 claims premised on a failure to train require first a plausible allegation that a constitutional violation has taken place. *See Lindsey* 918 F.3d at 1116–17. Given that Plaintiff has not successfully pleaded a constitutional violation against any individual Defendant, Plaintiff has not cleared this first hurdle. And even looking beyond this dispositive failure, Plaintiff has failed to plead the requisite elements of a claim for failure to train.

To successfully plead a claim for a failure to train, a plaintiff must allege that "(1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that

---

[6] As discussed *supra* Section III.A.1, Plaintiff has made no allegations relating to a failure to supervise, and the Court thus interprets Plaintiff's Count I solely as a claim for failure to train.

injury occurring." *George ex rel. Bradshaw v. Beaver Cnty., ex rel. Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1253 (10th Cir. 2022) (citing *Schneider*, 717 F.3d at 769-70).

The first element required for a successful allegation of a failure to train is the existence of policies involving deficient training. *See Bryson v. City of Okla. City*, 632 F.3d 784, 788 (10th Cir. 2010). Plaintiff does allege that CCCC had "policies, post orders, and trainings in place" which "purported to reduce suicide risk[.]" Compl. ¶ 141. But Plaintiff also alleges that in practice, CCCC failed "to have policies, post orders, and trainings in place that address[ed] the particular needs of detainees in an intake pod, particularly with regard to detoxification from substance abuse[,]" *id*. ¶ 146; and that Defendants' acts and omissions were "pursuant to [sic] policy and custom of providing inadequate training to screen, classify and monitor detainees that violated [Peña's] Constitutional rights[,]" *id*. ¶ 149. Plaintiff has thus met her burden as to the first element of a municipal liability claim for failure to train.

Successfully pleading the second element of a failure to train claim requires that Plaintiff connect such policies or customs to the occurrence of the injury at issue: here, Peña's suicide. *See Monell*, 436 U.S. at 692 ("Congress did not intend § 1983 liability to attach where . . . causation was absent.")  "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." *Schneider*, 717 F.3d at 770. "It is not enough . . . for [plaintiff] to show that there were general deficiencies in the . . . training program for jailers. Rather, [they] must identify a specific deficiency in the county's training program *closely related* to [the] ultimate injury[.]" *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (citations omitted), *abrogated in part on other grounds*, *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (emphasis added).

The Supreme Court has expressly warned of the dangers of using an expansive view of causation when analyzing claims premised on a failure to train. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *Harris*, 489 U.S. at 392 (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) "[P]ermitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard of fault would result in de facto *respondeat superior* liability on municipalities[.]" *Id.*

Under this stringent standard, Plaintiff has not successfully pleaded the second element of a failure-to-train claim. It cannot be said that Defendants CoreCivic and Cibola County's allegedly deficient policies are so closely related to the ultimate injury of Peña's suicide that they *caused* it to take place. Even interpreted in the light most favorable to Plaintiff, Plaintiff's allegations at most demonstrate that Defendants' actions created an environment in which Peña's suicide *could* take place. That, however, is far from the "direct causal link" that the Tenth Circuit has established is required for failure to train claims to advance. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).

Finally, Plaintiff fails to meet her pleading burden as to the third element required for failure-to-train claims: that Defendants' adoption of the challenged policies and customs amounts to deliberate indifference. Specifically, Plaintiff must allege facts which could plausibly demonstrate that the Defendants' adoption of a custom or policy "amounts to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *George*, 32 F.4th at 1253 (cleaned up) (citations omitted). "Deliberate indifference requires proof

that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (citation omitted).

"Ordinarily," in the failure to train context, a "plaintiff must prove a pattern of untrained employees' constitutional violations to show deliberate indifference." *Id.* (citation omitted). Plaintiff has made no such showing here and does not argue that such a pattern exists.

> [H]owever, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Pulsipher*, 143 F.3d at 1307-08 (quoting *Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997).

Looking to *Pulsipher*, Plaintiff argues that Defendant's policies and customs here rise to the level of making Peña's suicide "highly predictable[,]" such that no showing of similar violations is necessary. ECF No. 145 at 8.[7] The Court finds otherwise.

As Plaintiff acknowledges, Defendants had trainings and policies in place aimed at preventing prisoner suicides and identifying substance abuse issues. *See* Compl. ¶¶ 140-41, 143. Plaintiff nevertheless challenges CCCC's failure "to have policies, post orders and trainings in place that address the particular needs of detainees in an intake pod, particularly with regard to detoxification from substance abuse, in conjunction with their being housed ostensibly in isolation with minimal observation[.]" *Id.* ¶ 146. But as the Tenth Circuit has made clear, a failure to provide *additional*, potentially useful training does not suffice to establish municipal

---

[7] As relevant to Plaintiff's Count II and discussed *supra* Section III.A, Plaintiff argues that Pena *specifically* presented an obvious suicide risk to various CCCC employees, and that various CCCC employees' actions were undertaken with deliberate indifference. *See* ECF No. 145 at 8. However, such allegations have no bearing on whether CoreCivic and Cibola County were deliberately indifferent in adopting the challenged policies giving rise to Count I.

liability. *See George*, 32 F.4th at 1254 ("While [defendant] could have offered more or better suicide-prevention training, 'showing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability.'") (quoting *Connick v. Thompson*, 563 U.S. 51, 68 (2011)).

Given the existence of CCCC's suicide prevention and drug abuse trainings, Plaintiff's allegation becomes, in essence, one challenging Defendants' failure to provide additional, situation-specific training regarding the potential effects of drug withdrawal in instances when inmates are placed in protective quarantine. The Court cannot endorse a theory that finds prisoner suicides to be a "plainly obvious" result of this alleged failure. And without a showing that the relevant constitutional injury's occurrence was a "plainly obvious" outcome of a given failure to train, Plaintiff cannot establish liability under § 1983. *See Pulsipher*, 143 F.3d at 1308.

The link here between CCCC's allegedly deficient policies and Peña's suicide is too attenuated to raise a genuine question of fact as to whether Defendants acted with deliberate indifference in adopting the challenged policies.

Given Plaintiff's failure to state a claim for failure to train pursuant to § 1983, Count I is thus **DISMISSED** as to CoreCivic and Cibola County (and dismissed in its entirety).

### 2. Count II

Theoretically distinct from her claims for failure to train, Plaintiff alleges generalized, nonspecific due process violations against Defendants CoreCivic and Cibola County based on Peña's "conditions of confinement,"[8] Compl. ¶ 176; informal policies which allegedly "either incentivized silence, or . . . impeded the sharing of concerning information regarding a detainee's

---

[8] Presumably a reference to CCCC's restrictive quarantine policies, given Plaintiff's subsequent comment that such confinement "was not rationally related to a legitimate governmental interest under any circumstances including COVID[.]" Compl. ¶ 176.

medical or mental health needs[,]" *id.* ¶ 161; and failure "to properly screen, classify, and monitor detainees[,]" *id.* ¶ 170.[9]

As to all of Plaintiff's allegations in Count II, it is firmly established that a municipality can be liable when "the municipality itself causes the constitutional violation at issue." *Harris*, 489 U.S. at 385. Courts determining the validity of claims for municipal liability must thus first look to "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385.

To establish causation a plaintiff must show that "(1) a municipal employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *see also Monell*, 436 U.S. at 690 n.55; *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) ("[A] municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Without plausibly alleging that any municipal officer committed a constitutional violation, plaintiffs may not assert claims for municipal liability.

Thus, given Plaintiff's failure to plausibly allege that any individual Defendant committed a constitutional violation, Plaintiff cannot assert a claim for municipal liability.

Count II is therefore **DISMISSED** as to CoreCivic and Cibola County (and dismissed in its entirety).

### C. The Court declines to exercise supplemental jurisdiction over Counts III-VI

After Plaintiff filed her original Complaint in New Mexico state court, this case was removed to federal court on the basis of this Court's original jurisdiction over Plaintiff's claims

---

[9] Plaintiff's allegations regarding inadequate screening appear impossible to distinguish from her claims alleging a failure to train.

arising under the Fourteenth Amendment to the United States Constitution. *See* ECF No. 1 at 2; 28 U.S.C. § 1331. Counts III through VI assert claims under New Mexico state law, over which this Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367, given the common nucleus of facts between those claims and Plaintiff's federal claims.

Section 1367 provides that when all claims over which this Court has original jurisdiction have been dismissed, the Court may "decline to exercise supplemental jurisdiction[.]" 28 U.S.C. § 1367(c). While the language of § 1367(c) is discretionary, the Tenth Circuit has indicated that "[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (emphasis added). Following the Court's dismissal of Counts I and II, the Court thus declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

This Court has "discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). The Court finds all principles satisfied here, given that the dismissal of Plaintiff's claims entirely would require her to refile her claim in state court (and pay the attendant fees), and that all of Plaintiff's remaining claims fall squarely within the bounds of New Mexico state law. It is a paramount principle of federal jurisdiction that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Plaintiff's case is thus **REMANDED** to the Thirteenth Judicial District Court for the County of Cibola, New Mexico.

## IV.   CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED** that:

1. Defendants Warden Luis Rosa, Jr., Rubin Saavedra, Mikiele Montano, Jordan Casamero, Bennie Maria, Jr., Lavera James, and Alonzo Romero's Motion to Dismiss, ECF No. 128, is **GRANTED** as to Counts I and II;

2. Defendants CoreCivic and Cibola County's Motion to Dismiss, ECF No. 137, is **GRANTED** as to Counts I and II;

3. Counts I and II are **DISMISSED WITHOUT PREJUDICE**;

4. All other pending motions are **DENIED AS MOOT**;[10]

5. This case is **REMANDED** to the Thirteenth Judicial District Court for the County of Cibola, New Mexico; and

6. The Clerk of Court shall take all necessary steps to effectuate this remand and **CLOSE** this case.


**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[10] Plaintiff has filed an outstanding Motion for Sanctions for the Spoliation of Evidence. ECF No. 76. That Motion was referred to Magistrate Judge Kirtan Khalsa. *See* ECF No. 151. The Court hereby vacates the referral Order, ECF No. 151, in disposing of all pending Motions before this Court.